MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Boulevard, 6th Floor
Beverly Hills, California 90212
T: (310) 271.6223 |
F: (310) 271.9805
E: Michael.Berger@bankruptcypower.com

Proposed Counsel for Debtor-in-Possession
Shields Nursing Centers, Inc.

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| In re: | CASE NO.: 23-bk-41201 CN 11 |
| Shields Nursing Centers, Inc., | Chapter 11 |
| Debtor-in-Possession. | **DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF**<br><br>Date: September 25, 2023<br>Time: 2:00 p.m.<br>Place: U.S. Bankruptcy Court<br>   Courtroom 215<br>   1300 Clay Street<br>   Oakland, CA 94612 |

**TO THE HONORABLE CHARLES NOVACK, THE UNITED STATES**

**BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE;**

1

Case: 23-41201   Doc# 8   Filed: 09/21/23   Entered: 09/21/23 16:44:45   Page 1 of 54

**SECURED CREDITORS; TWENTY LARGEST UNSECURED CREDITORS, AND PARTIES ENTITLED TO NOTICE:**

## EMERGENCY MOTION

Pursuant to Section 363 of the Bankruptcy Code, Shields Nursing Centers, Inc., the debtor and debtor in possession in the above-captioned case ("Debtor"), moves, on an emergency basis, for an order authorizing the Debtor to use cash collateral of the secured creditors identified on Schedule D which is attached to this motion as Exhibit-3. (collectively referred to as the "Secured Creditors").

The Debtor commenced its Chapter 11 bankruptcy case on September 20, 2023 (the "Petition Date"). The Debtor has one prior chapter 11 bankruptcy case filed on May 30, 2012 in the Northern District Bankruptcy Court, Case No.: 12-44638, in which case the Debtor was able to confirm a reorganization plan on April 16, 2014.

The Debtor was formed in November 1978 and operates a post-acute skilled nursing facilities in Richmond, California and El Cerrito, California, and serving the Contra Costa and surrounding counties. The locations for the nursing facilities are 1919 Cutting Blvd., Richmond, California 94804 ("Richmond") and 3230 Carlson Blvd., El Cerrito, California 94530 ("El Cerrito").

The total capacity for the two facilities combined is 125 beds, with 94 beds being currently occupied. Both facilities have a five-star rating. The Debtor services patients with all types of acute diagnosis, including but not limited to extensive rehabilitation to long-term dementia, and with a specialty in healing difficult wounds. About 90% percent of Debtor's revenue is generated by Federal and State contracts (Medicare and Medi-Cal).

In the Richmond location, the Debtor has 83 beds, and at present time, 59 beds are occupied. The El Cerrito location has a capacity of 42 beds and currently 35 beds are

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

Case: 23-41201   Doc# 8   Filed: 09/21/23   Entered: 09/21/23 16:44:45   Page 2 of 54

occupied. The employees include physicians, nurses, therapists, psychologists, dietitians, and social service personnel.

The services performed by the employees include administering medications, helping patients with mobility and transfers, changing wound dressings, communicating with doctors and other healthcare providers, offering physical, occupational and speech therapies to improve patients' strength, coordination, balance, and communication abilities. The social workers employed by the Debtor provide emotional support to patients and their families, help coordinate post-discharge care, and connect the patients with community resources. The administrative staff handles scheduling and billing, maintains medical records, and assists with other logistic tasks. The goal is to help the patients recover from illness, injury or surgery and prepare them for a safe return to home or to a long-term care facility.

In order to effectively reorganize, Debtor must be able to use the cash collateral of its Secured Creditors in order to pay the reasonable expenses it incurs during the ordinary course of its business. The Debtor requests authority from this Court to approve use of cash collateral to pay the ordinary and necessary expenses as set forth in the attached cash collateral budget, and incorporated herein as **Exhibit "1"** to continue its business without any interruption. Use of the cash collateral as proposed by the Debtor will allow the Debtor to continue doing business, preserve the Debtor's assets for the benefit of the estate and the creditors, specifically the Secured Creditors. The Debtor has a reasonable prospect of reorganization through Chapter 11. The continued use of cash collateral to ensure no interruption of Debtor's business will further allow Debtor to emerge as a reorganized Debtor.

The relief sought in the Motion is based upon the Motion, the attached Memorandum of Points and Authorities, and declaration of William M. Shields Jr., concurrently with this motion. The relief sought in the Motion is also based on the

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

statements, arguments, and representations of counsel to be made at the hearing on the Motion, and any other evidence properly presented to the Court at or prior to the hearing on the Motion.

**FOR THESE REASONS,** the Debtor respectfully requests that the Court enter an order:

1. Granting the Motion;

2. Authorizing the Debtor's use of cash collateral pursuant to 11 U.S.C. § 363(c)(2)(B) and (c)(3) and Rule 4001(b)(2) of the Federal Rules of Bankruptcy Procedure; and

3. Granting such other relief as the Court deems just and proper.

LAW OFFICES OF MICHAEL JAY BERGER

Dated: 9/21/2023          By: _____
Michael Jay Berger
Proposed Counsel for Debtor-in-Possession
Shields Nursing Centers, Inc.

**4**

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 4 of 54

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Debtor seeks this Court's authority for use of cash collateral of the Secured Creditors, in order to pay the necessary and ordinary expenses of the Debtor's business operation as described in full detail are attached to the Declaration of William M. Shields Jr., as **Exhibit-1**.

## II.    JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this motion (the "Motion") pursuant to 28 U.S.C. §§ 157 and 1334, the Order Referring Bankruptcy Cases and Proceedings to Bankruptcy Judges, General Order 24 (N.D. Cal. Feb. 22, 2016), and Rule 5011-1(a) of the Bankruptcy Local Rules for the United States District Court for the Northern District of California (the "Bankruptcy Local Rules"). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b). The Debtor consents to the entry by the Court of a final order with respect to this Motion.

## III.    INTRODUCTORY STATEMENT

A. General Background

On September 20, 2023 (the "Petition Date"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No official committee of unsecured creditors has been appointed in the Case.

The Debtor was formed in November 1978 and operates a post-acute skilled nursing facilities in Richmond, California and El Cerrito, California, and serving the Contra Costa and surrounding counties. The total capacity for the two facilities combined is 125 beds, with 94 beds being currently occupied. Both facilities have a five-star rating.

5

The Debtor services patients with all types of acute diagnosis, including but not limited to extensive rehabilitation to long-term dementia, and with a specialty in healing difficult wounds. About 90% percent of Debtor's revenue is generated by Federal and State contracts (Medicare and Medi-Cal).

In the Richmond location, the Debtor has 83 beds, and at present time, 59 beds are occupied. The El Cerrito location has a capacity of 42 beds and currently 35 beds are occupied. The employees include physicians, nurses, therapists, psychologists, dietitians, and social service personnel.

The services performed by the employees include administering medications, helping patients with mobility and transfers, changing wound dressings, communicating with doctors and other healthcare providers, offering physical, occupational and speech therapies to improve patients' strength, coordination, balance, and communication abilities, The social workers employed by the Debtor provide emotional support to patients and their families, help coordinate post-discharge care, and connect the patients with community resources. The administrative staff handles scheduling and billing, maintains medical records, and assists with other logistic tasks. The goal is to help the patients recover from illness, injury or surgery and prepare them for a safe return to home or to a long-term care facility.

B. Debtor's Need for the Use of Cash Collateral and Affected Parties

The Debtor has determined that absent the use of cash collateral, it will be unable to operate its business during the Chapter 11 Case, irreparably harming the Debtor's estate and creditors. If the Debtor is unable, on a consistent basis, to maintain its business and provide the medical care services to its patients, the Debtor will not be able to run its business, will lose the existing patients, employees, vendors, the leases for both the Richmond and El Cerrito locations, and will ultimately be forced to cease operations. This will cause harm to the Debtor, but also to its patients who need 24/7 health care

6

Case: 23-41201   Doc# 8   Filed: 09/21/23   Entered: 09/21/23 16:44:45   Page 6 of 54

services which the Debtor can only provide if its business model is not interrupted due to delay in having access to the cash collateral to pay the necessary every day operating expenses. Furthermore, lack of use of cash collateral will harm the creditors of the estate because if the business ceases its operation, no revenue will be coming in to support the plan payments to be proposed through a plan of reorganization. Therefore, the Debtor's access to cash collateral is necessary to preserve and maximize the value of its assets for the benefit of all parties in interest. Thus, the use of cash collateral is essential to Debtor's continued ability to operate and provide proper service to its clients until consummation of a plan.

The Secured Creditors effected by Debtor's proposed use of cash collateral are as follows in the order of priority of UCC filings:

1. EDD: $194.32; UCC filed on 2/17/2017
2. IRS: $1,882,355.99; Federal Tax Lien filed on 8/22/2018
3. IRS: $851,339.40; Federal Tax Lien filed on 8/22/2018
4. IRS: $181,502.12; Federal Tax Lien filed on 12/17/2018
5. CT Corporation, as representative; UCC filed on 3/20/2019; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.
6. IRS: $95,794.32; Federal Tax Lien filed on 6/13/2019
7. CT Corporation, as representative; UCC filed on 8/2/201; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.
8. CT Corporation, as representative; UCC filed on 12/11/2019; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.
9. U.S. Small Business Administration: $2,000,000.00; filed on 5/23/2020
10. CT Corporation, as representative; UCC filed on 10/24/2022; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.

7

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 7 of 54

11. First Corporate Solutions, as representative; UCC filed on 12/27/2022; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.

12. BizFund LLC: $400,000.00; UCC filed on 3/10/2023

13. UFS West LLC; $200,000.00; UCC filed on 5/2/2023

(Collectively the "Secured Creditors").

A true and correct copy of Debtor's Schedules D indicating the priority and classification of the Secured Creditors is attached to the Declaration of William M. Shields Jr. as **Exhibit – 3.**

The Debtor seeks permission to use cash collateral, in accordance with the six (6) month budget ("Budget") attached as **Exhibit-1**, to pay various items in the ordinary course of business and as authorized by the Court, including payroll, utilities, taxes, rent, and other expenses necessary for the business operation. In addition, the Debtor requires the use of cash collateral to retain and pay costs of professionals, US Trustee Quarterly Fees, accounting fees who will enable the Debtor to reorganize its business. Taken together, the services provided by all of the foregoing parties and other entities are critical to the preservation of the Debtor's business and asset value.

Debtor's Schedule A/B estimated the assets at $1,726,970.40. A true and correct copy of Schedule A/B filed with the court is attached hereto as **Exhibit-2**. Based on the value of Debtor's assets, the Debtor at this time is offering to make monthly adequate protection payments to the first position secured creditor, the Internal Revenue Service, in the amount of $7,500.00 per month. Debtor believes that all the Secured Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of

8

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 8 of 54

cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted pre-petition.

The Debtor reasonably believes that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget. Without use of cash collateral, the Debtor would suffer immediate and irreparable harm and the entire bankruptcy proceeding will be jeopardized to the significant detriment of the Debtor's estate and its creditors. At a minimum, the Debtor's inability to use cash collateral would disrupt Debtor's operations as a going concern, would eliminate or significantly decrease the possibility of confirmation of a plan of reorganization, and would otherwise not be in the best interests of the Debtor, its estate, or creditors.

Access to existing cash collateral will provide the Debtor with the liquidity necessary to ensure that the Debtor has sufficient working capital and liquidity to operate its business and preserve and maintain the value of the Debtor's estates. Without access to such liquidity, the Debtor and its estate will face irreparable harm.

## IV. THE DEBTOR SHOULD BE PERMITTED TO USE CASH COLLATERAL

A. The Relief Requested Is Authorized by 11 U.S.C. § 363

Section 363 of the Bankruptcy Code, made pertinent to this case by 11 U.S.C. § 1107, governs a debtor-in-possessions' use of property of an estate. Section 363(c)(1) provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section 721, …of this title and unless the court orders otherwise, the [debtor-in- possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

9

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 9 of 54

11 U.S.C. § 363(c)(1).

Section 363(c)(2) stablishes a special requirement with respect to "cash collateral", by providing that a debtor-in-possession may not use, sell or lease "cash collateral" under subsection (c)(1) unless (i) such entity that has an interest in such collateral consents or (ii) the court, after notice and a hearing, authorizes such use, sale or lease.

> "Cash collateral" is defined by the Code as follows:
>
> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

The definition of "cash collateral" set forth in Section 363(a) refers to Section 552(b) of the Code, which provides:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547 and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, rents, or profits of such property, then such security interest extends to such proceeds, products, offspring, rents or profits acquired by the estate after

10

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

the commencement of the case to the extent provided by such security

agreement and by applicable non-bankruptcy law, except to the extent that

the court, after notice and a hearing and based on the equities of the case,

orders otherwise.

11 U.S.C. § 552(b)(1).

It is universally acknowledged that the debtor's cash "is the life blood of the business" and the bankruptcy court must assure that such life's blood "is available for use even if to a limited extent." *In re Mickler*, 9 B.R. 121, 123 (Bankr. M.D. Fla. 1981). Courts typically authorize a debtor-in-possession to use cash collateral to continue its business operations so long as the interests asserted by affected creditors in such cash are adequately protected.

As this Motion and the declarations in support of this Motion demonstrate, the standards for authorizing the Debtor to utilize cash collateral are satisfied in this case because the ongoing operations will preserve the value of the Debtor's businesses as a going concern.

For the present, the Debtor is offering to make monthly adequate protection payments to the Internal Revenue Service in the amount of $7,500.00. Debtor believes the Secured Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted pre-petition.

In the case at bar, the Court should allow the use of cash collateral because the interests of the Secured Creditors are adequately protected. Section 361 of the Bankruptcy Code provides a non-exclusive list of ways to provide adequate protection,

including periodic cash payments, the grant of liens on new collateral, and replacement liens. 11 U.S.C. §361. What constitutes adequate protection must be decided on a case-by-case basis. *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of the adequate protection requirement is to protect a secured creditor from diminution in the value of its interest in the collateral during the period of use. *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3rd Cir. 1994).

The Debtor submits that the proposed adequate protection is appropriate and sufficient to protect the Secured Creditors from any diminution in value of their collateral. The cash collateral will be used for funding business operations and allowing the Debtor to transition into the Chapter 11 Case. Immediate access to this liquidity will permit the Debtor to fund payroll, pay tax obligations, insurance, vendors, utilities, and otherwise continue business in the ordinary course. If Cash Collateral is not available, the Debtor's business will dissipate value to the detriment of the Secured Creditors, and other stakeholders, including the Debtor's patients. Thus, the use of cash collateral will protect the Secured Creditors' security interests by preserving the value of the Collateral. See *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). See also *Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit Athletic Footwear, Inc.)*, 193 B.R. 713, 716 (Bankr. D. Del. 1996*); In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992).

A debtor-in-possession's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 361. Although the term "adequate protection" is not defined in the Bankruptcy Code, Section 361 provides the following three non-exclusive examples of what may constitute adequate protection:

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 12 of 54

(1) requiring the [debtor-in-possession] to make a cash payment or periodic cash payments to such entity, to the extent that the …use…under section 363 of this title …results in a decrease in the value of such entity's interest in such property.

(2) providing to such entity an additional or replacement lien to the extent that such …use …results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief …as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361

Neither Section 361 nor any other provision of the Code defines the nature and extent of "interest in property" of which a secured creditor is entitled to adequate protection under Section 363. However, the statute plainly provides that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property". *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

Timbers teaches that secured creditors are entitled to "adequate protection" only against the diminution in their interest in asserted collateral by reason of the use of cash collateral. Where the value of the Secured Creditors collateral is not diminishing by the Debtor's use, sale, or lease, it follows that Lenders' interests in cash collateral is adequately protected.[1] In *In re McCombs Props. VI, Ltd.*, 88 B.R. 261 (Bankr. C.D. Cal. 1988), the court applied the foregoing straightforward interpretation of Timbers in ruling

---

[1] In *In re Alyucan Interstate Corp.*, 12 B.R. 803 (Bankr. D. Utah 1981), the court ruled that an equity cushion is not a requirement of adequate protection because a secured creditor is only entitled to protection against a decline in the value of its lien. The court reasoned that Section 361 speaks not in terms of preserving equity, but in terms of compensating for any "decrease in the value of [an] interest in property". *Id.*, at 803. The Supreme Court's decision in *Timbers* confirms the interpretation of Section 361.

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

that a secured creditor's interest in the cash and proceeds derived from a debtor's operations was adequately protected where the value of the collateral was not declining during the pendency of the bankruptcy case. On the nature of the protection required, the court noted:

> The analysis of the Supreme Court in Timbers is instructive here. The phrase "interest in property" in § 363 means the value of the collateral. That is the interest that I am required to protect. If that value is likely to diminish during the time of the use, adequate protection must be provided by the debtor. As the Supreme Court stated in Timbers, thus, it is agreed if the apartment project in this case had been declining in value petitioner would have been entitled, under § 362(d)(1) to cash payments or additional security in the amount of the decline, as § 361 describes.

Id., at 266 (quotations omitted).

Similarly, in *In re Forest Ridge, II, Ltd. Partnership,* 116 B.R. 937 (Bankr. W.D.N.C. 1990), the court ordered that no adequate protection payments were required, because the property in question was not decreasing in value. See also *In re Megan-Racine Assocs.,* Inc., 202 B.R. 660 (Bankr. N.D.N.Y. 1996) (stating that adequate protection is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of a debtor's reorganization); *In re Gallegos Research Corp.*, 193 B.R. 577 (Bankr. D. Colo. 1995).

Applying the foregoing authorities to the instant case, the Secured Creditors are entitled to protection only against the decline in value of its interests in the collateral which secures their claims. The Debtor's nursing care centers are projected to increase in value over the next several years and thus the continuing operation of the Debtor is adequate protection of the Secured Creditors.

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

In light of the foregoing, the Debtor submits that the proposed adequate protection to be provided is appropriate and necessary to protect the Secured Creditors against any diminution in value and is also fair and appropriate under the circumstances of this case and to ensure that the Debtor is able to continue using cash collateral in the near term, for the benefit of all parties in interest and its estate. In order to avoid immediate and irreparable harm and prejudice to the Debtor, its estate and all parties in interest, the Debtor requests that the Court authorize the Debtor to use cash collateral.

**B. Emergency Authority To Use Cash Collateral Is Warranted Under 11 U.S.C. § 363(c)(3) And Rule 4001(B) To Allow The Debtor To Operate Its Business**

The Debtor has requested an emergency hearing to consider the relief requested in this Motion. Section 363(c)(3) and Rule 4001(b)(2) require the Court to schedule a cash collateral hearing in accordance with the needs of the Debtor and conduct a preliminary hearing for the purpose of authorizing the use of cash collateral to the extent necessary to avoid irreparable harm to the Debtor. Section 363(c)(3) mandates that "[a]ny hearing [on the use of cash collateral] …shall be scheduled in accordance with the needs of the debtor". The Ninth Circuit has recognized that emergency relief is often crucial to the success of a corporate reorganization:

> We realize that "in certain circumstances, the entire reorganization
> effort may be thwarted if emergency relief is withheld" and that
> reorganization under the Bankruptcy Code "is a perilous process, seldom more so
> than at the outset of the proceedings when the debtor
> is often without sufficient cash flow to fund essential business
> operations". It is for this very reason that Congress specified that
> hearings concerning the use of cash collateral "shall be scheduled in
> accordance with the needs of the debtor". 11 U.S.C. § 363(c)(3).

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

In re Center Wholesale, Inc., 759 F.2d 1440, 1449 n. 21 (9th Cir. 1985) (citations omitted).

In the present case, emergency use of cash collateral by the Debtor, pending a final hearing, is necessary to prevent immediate and irreparable harm to the Debtor and its creditors. Absent such use, the Debtor will have no funds from which to conduct its operations.

## V.    CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter an order, in the form attached to the Declaration of William M. Shields Jr. as **Exhibit-4** authorizing the use of cash collateral; and granting the Debtor such other and further relief as is just and proper under the circumstances.

LAW OFFICES OF MICHAEL JAY BERGER

Dated: 9/21/2023          By: _____
Michael Jay Berger
Proposed Counsel for Debtor-in-Possession
Shields Nursing Centers, Inc.

16

# DECLARATION OF WILLIAM M. SHIELDS JR.

I, William M. Shields Jr., declare and state as follows:

1.      I am the Chief Executive Officer of Shields Nursing Centers, Inc. (the "Debtor") herein.  I have personal knowledge of the facts set forth below and if called to testify as to those facts, I could and would competently do so.

2.      The Debtor was formed in November 1978 and operates a post-acute skilled nursing facilities in Richmond, California and El Cerrito, California, and serving the Contra Costa and surrounding counties. The total capacity for the two facilities combined is 125 beds, with 94 beds being currently occupied. Both facilities have a five-star rating. The Debtor services patients with all types of acute diagnosis, including but not limited to extensive rehabilitation to long-term dementia, and with a specialty in healing difficult wounds. About 90% percent of Debtor's revenue is generated by Federal and State contracts (Medicare and Medi-Cal).

3.      In the Richmond location, the Debtor has 83 beds, and at present time, 59 beds are occupied.  The El Cerrito location has a capacity of 42 beds and currently 35 beds are occupied. The employees include physicians, nurses, therapists, psychologists, dietitians, and social service personnel.

4.      The services performed by the employees include administering medications, helping patients with mobility and transfers, changing wound dressings, communicating with doctors and other healthcare providers, offering physical, occupational and speech therapies to improve patients' strength, coordination, balance, and communication abilities,  The social workers employed by the Debtor provide emotional support to patients and their families, help coordinate post-discharge care, and connect the patients with community resources.  The administrative staff handles scheduling and billing, maintains medical records, and assists with other logistic tasks.

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

The goal is to help the patients recover from illness, injury or surgery and prepare them for a safe return to home or to a long-term care facility.

5.    Absent the use of cash collateral, it will be unable to operate its business during the Chapter 11 Case, irreparably harming the Debtor's estate and creditors. If the Debtor is unable, on a consistent basis, to maintain its business and provide the medical care services to its patients, the Debtor will not be able to run its business, will lose the existing patients, employees, vendors, the leases for both the Richmond and El Cerrito locations, and will ultimately be forced to cease operations. This will cause harm to the Debtor, but also to its patients who need 24/7 health care services which the Debtor can only provide if its business model is not interrupted due to delay in having access to the cash collateral to pay the necessary every day operating expenses. Furthermore, lack of use of cash collateral will harm the creditors of the estate because if the business ceases its operation, no revenue will be coming in to support the plan payments to be proposed through a plan of reorganization. The Debtor's access to cash collateral is necessary to preserve and maximize the value of its assets for the benefit of all parties in interest. The use of cash collateral is essential to Debtor's continued ability to operate and provide proper service to its clients until consummation of a plan.

6.    The Secured Creditors effected by Debtor's proposed use of cash collateral are as follows in the order of priority of UCC filings:

- EDD: $194.32; UCC filed on 2/17/2017
- IRS: $1,882,355.99; Federal Tax Lien filed on 8/22/2018
- IRS: $851,339.40; Federal Tax Lien filed on 8/22/2018
- IRS: $181,502.12; Federal Tax Lien filed on 12/17/2018
- CT Corporation, as representative; UCC filed on 3/20/2019; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.
- IRS: $95,794.32; Federal Tax Lien filed on 6/13/2019

18

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 18 of 54

- CT Corporation, as representative; UCC filed on 8/2/201; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.

- CT Corporation, as representative; UCC filed on 12/11/2019; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.

- U.S. Small Business Administration: $2,000,000.00; filed on 5/23/2020

- CT Corporation, as representative; UCC filed on 10/24/2022; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.

- First Corporate Solutions, as representative; UCC filed on 12/27/2022; the secured creditor's name and amount are unknown at this time; Debtor will amend its schedules.

- BizFund LLC: $400,000.00; UCC filed on 3/10/2023

- UFS West LLC; $200,000.00; UCC filed on 5/2/2023

(Collectively the "Secured Creditors"). A true and correct copy of Debtor's Schedules D indicating the priority and classification of the Secured Creditors is attached hereto as **Exhibit – 3.**

7. The Debtor seeks permission to use cash collateral, in accordance with the six (6) month budget ("Budget") attached hereto as **Exhibit-1**, to pay various items in the ordinary course of business and as authorized by the Court, including payroll, utilities, taxes, rent, and other expenses necessary for the business operation. In addition, the Debtor requires the use of cash collateral to retain and pay costs of professionals, US Trustee Quarterly Fees, accounting fees who will enable the Debtor to reorganize its business. Taken together, the services provided by all of the foregoing parties and other entities are critical to the preservation of the Debtor's business and asset value.

8. Debtor's Schedule A/B estimated the assets at $1,726,970.40. A true and correct copy of Schedule A/B filed with the court is attached hereto as **Exhibit-2**. Based on the value of Debtor's assets, the Debtor at this time is offering to make monthly adequate protection payments to the first position secured creditor, the Internal Revenue Service, in the amount of $7,500.00 per month. Debtor believes that all the Secured

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

Creditors are adequately protected by the ongoing business operations and the income to be generated throughout the pendency of Debtor's bankruptcy case, and the granting of a replacement lien to the extent of any diminution in value of collateral as a result of the Debtor's use of cash collateral. The replacement lien would be on all post-petition assets in the same priority and to the same extent and validity as the Secured Creditors asserted pre-petition.

9. The Debtor reasonably believes that the Budget will be adequate, considering all available assets, to pay all administrative expenses due or accruing during the period covered by the Budget. Without use of cash collateral, the Debtor would suffer immediate and irreparable harm and the entire bankruptcy proceeding will be jeopardized to the significant detriment of the Debtor's estate and its creditors. At a minimum, the Debtor's inability to use cash collateral would disrupt Debtor's operations as a going concern, would eliminate or significantly decrease the possibility of confirmation of a plan of reorganization, and would otherwise not be in the best interests of the Debtor, its estate, or creditors.

10. Access to existing cash collateral will provide the Debtor with the liquidity necessary to ensure that the Debtor has sufficient working capital and liquidity to operate its business and preserve and maintain the value of the Debtor's estates. Without access to such liquidity, the Debtor and its estate will face irreparable harm.

11. The proposed order authorizing use of cash collateral is attached hereto as **Exhibit-4.**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed on September 21, 2023 at _Hercules_, California.

William M. Shields Jr.

DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; STATEMENT REGARDING CASH COLLATERAL; DECLARATION OF WILLIAM M. SHIELDS JR. IN SUPPORT THEREOF

**EXHIBIT-1**

SHIELDS NURSING CENTERS, INC.
CASH FLOW ANALYSIS FOR THE YEAR 2023-24
(EC - El Cerrito Facility; RCH - Richmond Facility)

| | | | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | TOTAL | |
|---|---|---|---|---|---|---|---|---|---|---|
| **COLLECTIONS** | | | | | | | | | | |
| | EL CERRITO | | 498,000.00 | 498,000.00 | 498,000.00 | 498,000.00 | 512,000.00 | 512,000.00 | 3,016,000.00 | Rate increase for Medi-Cal effective 1/1/24 |
| | RICHMOND | | 1,050,000.00 | 1,050,000.00 | 1,050,000.00 | 1,050,000.00 | 1,105,000.00 | 1,105,000.00 | 6,410,000.00 | Rate increase for Medi-Cal effective 1/1/24 |
| **TOTAL** | | | 1,548,000.00 | 1,548,000.00 | 1,548,000.00 | 1,548,000.00 | 1,617,000.00 | 1,617,000.00 | 9,426,000.00 | |
| | | | | | | | | | | |
| **EXPENSES** | | | | | | | | | | |
| *WAGES* | | | | | | | | | | |
| | CORPORATE | | 33,907.30 | 33,907.30 | 33,907.30 | 33,907.30 | 34,924.52 | 34,924.52 | 205,478.24 | - |
| | William Shields - Insider Compensation | | 23,232.00 | 23,232.00 | 23,232.00 | 23,232.00 | 23,232.00 | 23,232.00 | 139,392.00 | Union Increases effective 1/1/24 |
| | Monique Shields - Insider Compensation | | 16,704.00 | 16,704.00 | 16,704.00 | 16,704.00 | 16,704.00 | 16,704.00 | 100,224.00 | |
| | Gregory Shields - Insider Compensation | | 9,230.80 | 9,230.80 | 9,230.80 | 9,230.80 | 9,230.80 | 9,230.80 | 55,384.80 | |
| | EL CERRITO | $ | 247,424.94 | 247,424.94 | 247,424.94 | 247,424.94 | 268,260.72 | 268,260.72 | 1,526,221.18 | Union Increases effective 1/1/24 |
| | RICHMOND | $ | 479,575.69 | 479,575.69 | 479,575.69 | 479,575.69 | 519,961.02 | 519,961.02 | 2,958,224.81 | Union Increases effective 1/1/24 |
| **SUB-TOTAL —WAGES** | | | 810,074.73 | 810,074.73 | 810,074.73 | 810,074.73 | 872,313.05 | 872,313.05 | 4,984,925.02 | |
| | KAISER | | 74,150.00 | 74,150.00 | 74,150.00 | 74,150.00 | 77,858.00 | 77,858.00 | 452,316.00 | Rate increases effective 1/1/24 |
| *BENELECT* | | | | | | | | | | |
| | ADMINISTRATION | | 5,100.00 | 5,100.00 | 5,100.00 | 5,100.00 | 5,100.00 | 5,100.00 | 30,600.00 | Employee health benefit accounts - average monthly charges on health benefit debit cards |
| | ELECTRONIC FUNDS TRANSFER | | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 3,000.00 | 3,000.00 | 16,000.00 | Fees for employee use of health benefit debit cards |
| | DELTA DENTAL | | 3,800.00 | 3,800.00 | 3,800.00 | 3,800.00 | 3,950.00 | 3,950.00 | 23,100.00 | Rate increases effective 1/1/24 |
| *LEASE* | | | | | | | | | | |
| | Willie & Monique Shields - Corporate Lease | | 16,427.00 | 16,427.00 | 16,427.00 | 16,427.00 | 16,427.00 | 16,427.00 | 98,562.00 | Landlords for Corporate Facility are insiders of the Debtor |

9/20/2023

CASHFLOW 2023-2024 projected outlay for 6 months (Revised 2)

**SHIELDS NURSING CENTERS, INC.**
**CASH FLOW ANALYSIS FOR THE YEAR 2023-24**
(EC - El Cerrito Facility; RCH - Richmond Facility)

| | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| James Prasad - RCH Lease | 41,405.00 | 41,405.00 | 41,405.00 | 41,405.00 | 41,405.00 | 41,405.00 | 248,430.00 | Landlord for RCH |
| Alerica Corporation et al - EC Lease | 22,341.00 | 22,341.00 | 22,341.00 | 22,341.00 | 22,341.00 | 22,341.00 | 134,046.00 | Landlords are: Alerica Corporation, Santiago-Leon Balazs and Margarita C. Balazs, Trustees of the Santiago-Leon and Margarita C. Balazs Living Trust |
| WORKERS COMP INS. | 20,100.00 | 20,100.00 | 20,100.00 | 20,100.00 | 20,100.00 | 20,100.00 | 120,600.00 | |
| LIABILITY INS. | 6,143.94 | 6,143.94 | 6,143.94 | 6,143.94 | 6,143.94 | 6,143.94 | 36,863.64 | |
| PROPERTY INS. | 3,541.64 | 3,541.64 | 3,541.64 | 3,541.64 | 3,541.64 | 3,541.64 | 21,249.84 | |
| IRS - Payroll taxes | 95,378.00 | 95,378.00 | 95,378.00 | 95,378.00 | 95,378.00 | 95,378.00 | 572,268.00 | |
| IRS- FUTA | | 1,500.00 | | | 1,500.00 | | 3,000.00 | Paid quarterly |
| EDD - SUI | | 7,000.00 | | | 5,500.00 | | 12,500.00 | Paid quarterly |
| *PROPERTY TAX* | | | | | | | | |
| Corporate | 1,417.00 | 1,417.00 | 1,417.00 | 1,417.00 | 1,417.00 | 1,417.00 | 8,502.00 | |
| EC | 1,917.00 | 1,917.00 | 1,917.00 | 1,917.00 | 1,917.00 | 1,917.00 | 11,502.00 | |
| RCH | 6,667.00 | 6,667.00 | 6,667.00 | 6,667.00 | 6,667.00 | 6,667.00 | 40,002.00 | |
| *DEPT OF PUBLIC HEALTH* | | | | | | | | |
| EC | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 3,750.00 | 22,500.00 | Facility license |
| RCH | 7,167.00 | 7,167.00 | 7,167.00 | 7,167.00 | 7,167.00 | 7,167.00 | 43,002.00 | Facility license |
| Department of Health Services - Quality Assurance Fee - RCH | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 36,000.00 | 216,000.00 | |
| Department of Health Services - Quality Assurance Fee - EC | 18,000.00 | 18,000.00 | 18,000.00 | 18,000.00 | 18,000.00 | 18,000.00 | 108,000.00 | |
| **NURSING - All Facilities** | | | | | | | | |
| OTHER EMP. BENEFITS | 1,603.00 | 1,603.00 | 1,603.00 | 1,603.00 | 1,603.00 | 1,603.00 | 9,618.00 | |
| MEDICAL DIRECTOR | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 6,000.00 | 36,000.00 | Independent Contractor |
| PHARMACY CONSULTANT | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 1,300.00 | 7,800.00 | Independent Contractor |

SHIELDS NURSING CENTERS, INC.

CASH FLOW ANALYSIS FOR THE YEAR 2023-24

(EC - El Cerrito Facility; RCH - Richmond Facility)

| | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| PURCHASED SERVICES | 558.00 | 558.00 | 558.00 | 558.00 | 558.00 | 558.00 | 3,348.00 | Nursing consultants (independent contractors) |
| OXYGEN & OTHER MED GASES | 1,019.00 | 1,019.00 | 1,019.00 | 1,019.00 | 1,019.00 | 1,019.00 | 6,114.00 | |
| PHARMACY HOUSE SUPPLIES | 2,359.00 | 2,359.00 | 2,359.00 | 2,359.00 | 2,359.00 | 2,359.00 | 14,154.00 | |
| OTHER MED CARE MATERIALS | 7,889.00 | 7,889.00 | 7,889.00 | 7,889.00 | 7,889.00 | 7,889.00 | 47,334.00 | |
| OFFICE SUPPLIES | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 | |
| MINOR MEDICAL EQUIPMENT | 1,571.00 | 1,571.00 | 1,571.00 | 1,571.00 | 1,571.00 | 1,571.00 | 9,426.00 | Examples: Blood pressure cuffs, IV stands |
| SEMINARS | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 | |
| EMPLOYEE RECRUITMENT | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 4,500.00 | |
| **PLANT OPERATION- All Facilities** | | | | | | | | |
| MAINTENANCE SUPPLIES | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 3,150.00 | 18,900.00 | |
| REPAIR & MAINTENANCE | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 30,000.00 | Examples: broken toilets, sheet rock work, plumbing work, flooring repair |
| OTHER PURCH. SERVICES | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 1,250.00 | 7,500.00 | |
| ELECTRICITY | 7,760.00 | 7,760.00 | 7,760.00 | 7,760.00 | 7,760.00 | 7,760.00 | 46,560.00 | |
| GAS | 7,061.00 | 7,061.00 | 7,061.00 | 7,061.00 | 7,061.00 | 7,061.00 | 42,366.00 | |
| WATER | 3,404.00 | 3,404.00 | 3,404.00 | 3,404.00 | 3,404.00 | 3,404.00 | 20,424.00 | |
| GARBAGE | 9,556.00 | 9,556.00 | 9,556.00 | 9,556.00 | 9,556.00 | 9,556.00 | 57,336.00 | |
| **HOUSEKEEPING- All Facilities** | | | | | | | | |
| EMPLOYEE BENEFITS | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 | |
| MINOR EQUIPMENT | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 | Examples: vacuum cleaners, buffers |
| CLEANING SUPPLIES | 3,625.00 | 3,625.00 | 3,625.00 | 3,625.00 | 3,625.00 | 3,625.00 | 21,750.00 | |
| **LAUNDRY & LINEN- All Facilities** | | | | | | | | |
| LINEN & BEDDING | 2,463.00 | 2,463.00 | 2,463.00 | 2,463.00 | 2,463.00 | 2,463.00 | 14,778.00 | |
| SUPPLIES | 2,197.00 | 2,197.00 | 2,197.00 | 2,197.00 | 2,197.00 | 2,197.00 | 13,182.00 | |

9/20/2023

CASHFLOW 2023-2024 projected outlay for 6 months (Revised 2)

SHIELDS NURSING CENTERS, INC.
CASH FLOW ANALYSIS FOR THE YEAR 2023-24
(EC - El Cerrito Facility; RCH - Richmond Facility)

| | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| PURCHASED SERVICES | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 2,100.00 | Preventative maintenance agreement |
| REPAIR/MAINTENANCE | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 4,500.00 | |
| **DIETARY- All Facilities** | | | | | | | | |
| EMPLOYEE BENEFITS | 375.50 | 375.50 | 375.50 | 375.50 | 375.50 | 375.50 | 2,253.00 | |
| PURCHASED SERVICES | 5,211.00 | 5,211.00 | 5,211.00 | 5,211.00 | 5,211.00 | 5,211.00 | 31,266.00 | Dietician (independent contractor) |
| FOOD | 31,455.00 | 31,455.00 | 31,455.00 | 31,455.00 | 32,084.00 | 32,084.00 | 189,988.00 | |
| SUPPLIES | 4,913.00 | 4,913.00 | 4,913.00 | 4,913.00 | 5,011.00 | 5,011.00 | 29,674.00 | |
| MINOR EQUIPMENT | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,500.00 | Examples: blender, toaster, warming trays, utensils |
| REPAIRS | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 750.00 | 4,500.00 | |
| **SOCIAL SERVICES- All Facilities** | | | | | | | | |
| EMPLOYEE BENEFITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,500.00 | |
| SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| CONSULTANT | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 1,800.00 | 10,800.00 | |
| **ACTIVITY- All Facilities** | | | | | | | | |
| SUPPLIES | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 | |
| EMPLOYEE BENEFITS | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 900.00 | |
| **EDUCATION- All Facilities** | | | | | | | | |
| EMPLOYEE BENEFITS | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,500.00 | |
| PURCHASED SERVICES | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 900.00 | Independent contractors hired to come in and teach classes |
| **MEDICAL RECORDS- All Facilities** | | | | | | | | |
| PURCHASED SERVICES | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 2,400.00 | Medical records consultant (independent contractor) |
| SUPPLIES | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,500.00 | |
| EMPLOYEE BENEFITS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| **INFORMATION TECHNOLOGY - All Facilities** | | | | | | | | |
| PURCHASED SERVICES | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 900.00 | 5,400.00 | Backup contractors to assist in-house IT desk |
| EMPLOYEE BENEFITS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| **CENTRAL SUPPLY-** | | | | | | | | |
| EMPLOYEE BENEFITS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| SUPPLIES | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 3,300.00 | |

CASHFLOW 2023-2024 projected outlay for 6 months (Revised 2)

9/20/2023

SHIELDS NURSING CENTERS, INC.

CASH FLOW ANALYSIS FOR THE YEAR 2023-24

(EC - El Cerrito Facility; RCH - Richmond Facility)

| | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | TOTAL | Proposed APO Payments per Cash Collateral Motion |
|---|---|---|---|---|---|---|---|---|
| **ADMISSION- All Facilities** | | | | | | | | |
| SUPPLIES | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| EMPLOYEE BENEFITS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| **ADMINISTRATION- All Facilities** | | | | | | | | |
| EMPLOYEE BENEFITS | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 2,500.00 | 15,000.00 | |
| LEGAL FEES (Estimated; subject to Court approval) | | | | | | 15,000.00 | 15,000.00 | |
| ACCOUNTING FEES (Estimated; subject to Court approval) | | | | 5,000.00 | | | 5,000.00 | |
| Office of the U.S. Trustee - Quarterly Fees (Estimated) | | 37,017.39 | | | 37,017.39 | | 74,034.79 | |
| IRS - Adequate Protection Payments | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 7,500.00 | 45,000.00 | |
| OFFICE SUPPLIES | 1,890.00 | 1,890.00 | 1,890.00 | 1,890.00 | 1,890.00 | 1,890.00 | 11,340.00 | |
| MAIL & SHIPPING | 898.00 | 898.00 | 898.00 | 898.00 | 898.00 | 898.00 | 5,388.00 | |
| PURCHASED SERVICES | 2,028.00 | 2,028.00 | 2,028.00 | 2,028.00 | 2,028.00 | 2,028.00 | 12,168.00 | Examples: consulting services for review of documents or drafting documents, policy / procedure writing, employee handbook |
| TRAVEL | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 9,000.00 | |
| TELEPHONE | 10,870.00 | 10,870.00 | 10,870.00 | 10,870.00 | 10,870.00 | 10,870.00 | 65,220.00 | Facilities' integrated phone system and internet |
| DUES & SUBSCRIPTIONS | 5,884.00 | 5,884.00 | 5,884.00 | 5,884.00 | 5,884.00 | 5,884.00 | 35,304.00 | Examples: TV services, subscription phone applications, HOA dues for corporate office |
| SEMINARS | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 2,100.00 | |
| EMPLOYEE RECRUITMENT | 340.00 | 340.00 | 340.00 | 340.00 | 340.00 | 340.00 | 2,040.00 | |
| ADVERTISING | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 2,100.00 | 12,600.00 | |

SHIELDS NURSING CENTERS, INC.

CASH FLOW ANALYSIS FOR THE YEAR 2023-24

(EC - El Cerrito Facility; RCH - Richmond Facility)

| | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | TOTAL | |
|---|---|---|---|---|---|---|---|---|
| MINOR EQUIPMENT | 1,211.00 | 1,211.00 | 1,211.00 | 1,211.00 | 1,211.00 | 1,211.00 | 7,266.00 | Examples: Batteries, phones, copy machines |
| DATA PROCESSING | 15,618.00 | 15,618.00 | 15,618.00 | 15,618.00 | 15,618.00 | 15,618.00 | 93,708.00 | Medical records maintenance and electronic filing |
| MISCELLANEOUS | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 550.00 | 3,300.00 | |
| **LEASES & RENTAL-** | | | | | | | | |
| BANK FEES /FINANCE CHARGES | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 9,000.00 | |
| Dimension Funding, LLC | 3672.00 | 3672.00 | 3672.00 | 3672.00 | 3672.00 | 3672.00 | 22,032.00 | Nursing call systems equipment lease at EC and RCH |
| Leaf Capital Funding, LLC | 623.62 | 623.62 | 623.62 | 623.62 | 623.62 | 623.62 | 3,741.72 | Entertain360 equipment lease at EC |
| Leaf Capital Funding, LLC | 625.49 | 625.49 | 625.49 | 625.49 | 625.49 | 625.49 | 3,752.94 | Entertain360 equipment lease at RCH |
| **MISCELLANEOUS-** | | | | | | | | |
| BARBER & BEAUTICIAN | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 200.00 | 1,200.00 | |
| PERSONAL ITEMS | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 3,000.00 | Hygenic items for residents, examples: toothbrushes, combs, toothpaste |
| **PATIENT SUPPLIES-** | | | | | | | | |
| PATIENT SUPPLIES-PART A | 1250.00 | 1250.00 | 1250.00 | 1250.00 | 1250.00 | 1250.00 | 7,500.00 | |
| PATIENT SUPPLIES-HMO | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 790.00 | 4,740.00 | |
| OXYGEN-PART A | 590.00 | 590.00 | 590.00 | 590.00 | 590.00 | 590.00 | 3,540.00 | |
| OXYGEN-HMO | 860.00 | 860.00 | 860.00 | 860.00 | 860.00 | 860.00 | 5,160.00 | |
| OXYGEN-MEDICAL | 652.00 | 652.00 | 652.00 | 652.00 | 652.00 | 652.00 | 3,912.00 | |
| PEN FEEDING-PART A | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 300.00 | 1,800.00 | |
| PEN FEEDING-HMO | 2500.00 | 2500.00 | 2500.00 | 2500.00 | 2500.00 | 2500.00 | 15,000.00 | |
| X-RAY PART A | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 250.00 | 1,500.00 | |
| X-RAY HMO | 607.00 | 607.00 | 607.00 | 607.00 | 607.00 | 607.00 | 3,642.00 | |
| X-RAY MEDICAL | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 600.00 | |
| LAB PART A | 2339.00 | 2339.00 | 2339.00 | 2339.00 | 2339.00 | 2339.00 | 14,034.00 | |
| LAB MEDICAL | 1895.00 | 1895.00 | 1895.00 | 1895.00 | 1895.00 | 1895.00 | 11,370.00 | |
| LAB HMO | 5057.00 | 5057.00 | 5057.00 | 5057.00 | 5057.00 | 5057.00 | 30,342.00 | |
| EQUIPMENT PART A | 822.00 | 822.00 | 822.00 | 822.00 | 822.00 | 822.00 | 4,932.00 | |
| EQUIPMENT MEDICAL | 1469.00 | 1469.00 | 1469.00 | 1469.00 | 1469.00 | 1469.00 | 8,814.00 | |

SHIELDS NURSING CENTERS, INC.

CASH FLOW ANALYSIS FOR THE YEAR 2023-24

(EC - El Cerrito Facility; RCH - Richmond Facility)

| | Sep-23 | Oct-23 | Nov-23 | Dec-23 | Jan-24 | Feb-24 | TOTAL |
|---|---|---|---|---|---|---|---|
| EQUIPMENT HMO | 1985.00 | 1985.00 | 1985.00 | 1985.00 | 1985.00 | 1985.00 | 11,910.00 |
| **THERAPY-** | | | | | | | |
| Physical Therapy-PART A | 18562.00 | 18562.00 | 18562.00 | 18562.00 | 18562.00 | 18562.00 | 111,372.00 |
| Occupational Therapy - PART A | 17011.00 | 17011.00 | 17011.00 | 17011.00 | 17011.00 | 17011.00 | 102,066.00 |
| Speech Therapy -PART A | 7826.00 | 7826.00 | 7826.00 | 7826.00 | 7826.00 | 7826.00 | 46,956.00 |
| Physical Therapy -HMO | 24983.00 | 24983.00 | 24983.00 | 24983.00 | 24983.00 | 24983.00 | 149,898.00 |
| Occupational Therapy-HMO | 19033.00 | 19033.00 | 19033.00 | 19033.00 | 19033.00 | 19033.00 | 114,198.00 |
| Speech Therapy -HMO | 2119.00 | 2119.00 | 2119.00 | 2119.00 | 2119.00 | 2119.00 | 12,714.00 |
| Physical Therapy -PART B | 2683.00 | 2683.00 | 2683.00 | 2683.00 | 2683.00 | 2683.00 | 16,098.00 |
| Occupational Therapy -PART B | 4812.00 | 4812.00 | 4812.00 | 4812.00 | 4812.00 | 4812.00 | 28,872.00 |
| Speech Therapy -PART B | 462.00 | 462.00 | 462.00 | 462.00 | 462.00 | 462.00 | 2,772.00 |
| **AMBULANCE** | | | | | | | |
| AMBULANCE-PART A | 1823.00 | 1823.00 | 1823.00 | 1823.00 | 1823.00 | 1823.00 | 10,938.00 |
| AMBULANCE-MEDICAL | 1533.00 | 1533.00 | 1533.00 | 1533.00 | 1533.00 | 1533.00 | 9,198.00 |
| AMBULANCE-HMO | 746.00 | 746.00 | 746.00 | 746.00 | 746.00 | 746.00 | 4,476.00 |
| **PHARMACY-** | | | | | | | |
| MEDICARE PT. A | 8500.00 | 8500.00 | 8500.00 | 8500.00 | 8500.00 | 8500.00 | 51,000.00 |
| HMO | 11677.00 | 11677.00 | 11677.00 | 11677.00 | 11677.00 | 11677.00 | 11677.00 |
| MEDI-CAL S.O.C. | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 350.00 | 2,100.00 |
| **TOTAL EXPENSES** | 1,499,294.92 | 1,544,812.31 | 1,499,294.92 | 1,504,294.92 | 1,610,635.64 | 1,581,618.24 | |
| **TOTAL REVENUE** | 1,548,000.00 | 1,548,000.00 | 1,548,000.00 | 1,548,000.00 | 1,617,000.00 | 1,617,000.00 | |
| **PROFIT/LOSS** | 48,705.08 | 3,187.69 | 48,705.08 | 43,705.08 | 6,364.36 | 35,381.76 | |

CASHFLOW 2023-2024 projected outlay for 6 months (Revised 2)

9/20/2023

**EXHIBIT-2**

# Official Form 206A/B
## Schedule A/B: Assets - Real and Personal Property          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

### Part 1:  Cash and cash equivalents

1. Does the debtor have any cash or cash equivalents?

☐ No. Go to Part 2.
☑ Yes Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

**Current value of debtor's interest**

2.   **Cash on hand**          $150.00

3.   Checking, savings, money market, or financial brokerage accounts *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|---|
| 3.1. | **Bank of the West** | **Receivables account** | 9159 | $381.44 |
| 3.2. | **Bank of the West**<br>**Cards issued to employees to use when they go to see their doctors**<br>**Debtor needs to keep this account open; otherwise, the employees won't be able to use the debit cards.** | **HSA Marin (high share account with Kaiser for deductibles)** | 9629 | $4,243.81 |
| 3.3. | **Bank of the West** | **Payroll Account** | 9287 | $282,886.91 |
| 3.4. | **Bank of the West** | **Reserve Account** | 5467 | $503.81 |
| 3.5. | **Bank of the West** | **Accounts Payable** | 8849 | $0.00 |

Case: 23-41201   Doc# 8   Filed: 09/21/23   Entered: 09/21/23 16:44:45   Page 30 of 54

**Bank of the West**
**CA requires interest bearing trust**
**account for patients that would like to**
**deposit funds for the company to keep**
**for them. This includes the patients'**
**social security income (use the funds**
**to pay for certain expenses of the**
3.6.    **patients, order clothes).**        | Patient Trust Account | 0036 | $301.92

---

4.    **Other cash equivalents** *(Identify all)*

5.    **Total of Part 1.**                                                          | $288,467.89
      Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

**Part 2:    Deposits and Prepayments**

**6. Does the debtor have any deposits or prepayments?**

☑ No.  Go to Part 3.
☐ Yes Fill in the information below.

**Part 3:    Accounts receivable**

**10. Does the debtor have any accounts receivable?**

☐ No.  Go to Part 4.
☑ Yes Fill in the information below.

11.    **Accounts receivable**
       11a. 90 days old or less:
       Accounts receivable from
       Medicare, Medi-Cal,
       Private Insurances,
       HMO/MGD Care, Hospice
       (El Cerrito): $500,832.94
       Accounts receivable from
       Medicare, Medi-Cal,
       Private Insurances,
       HMO/MGD Care, Hospice
       (Richmond):
       $1,072,870.86.
       Total between the
       Richmond and El Cerrito
       is $1,573,703.80. Debtor
       anticipates collecting 80%
       of the face value which is        **$1,258,963.04**   -        **0.00**  = ....        **$1,258,963.04**
       $1,258,963.04.                    face amount              doubtful or uncollectible accounts

---

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 31 of 54

11b. Over 90 days old:
Accounts receivable from
Medicare, Medi-Cal,
Private Insurances,
HMO/MGD Care, Hospice
(Cerritos): $54,082.43
(50% likelihood of
collection: $27,041.21).
Accounts receivable from
Medicare, Medi-Cal,
Private Insurances,
HMO/MGD Care, Hospice
(Richmond): $127,996.53
(50% likelihood of
collection = $63,998.26).

| | | |
|---|---|---|
| **$182,078.94** - | **$91,039.47** =.... | **$91,039.47** |
| face amount | doubtful or uncollectible accounts | |

**12.**  **Total of Part 3.**

Current value on lines 11a + 11b = line 12.  Copy the total to line 82.

| **$1,350,002.51** |
|---|

**Part 4:**     **Investments**

**13. Does the debtor own any investments?**

☑ No.  Go to Part 5.
☐ Yes Fill in the information below.

**Part 5:**     **Inventory, excluding agriculture assets**

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No.  Go to Part 6.
☑ Yes Fill in the information below.  See item #39 below.

**Part 6:**     **Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No.  Go to Part 7.
☐ Yes Fill in the information below.

**Part 7:**     **Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No.  Go to Part 8.
☑ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

**39.**   **Office furniture**

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 32 of 54

**Inventory List for both locations: 125 electric bends, 125 night stands, 125 table lamps, 125 overbed tables, 40 desktop computers including monitors, 12 laptops and tablets, 125 folding chairs, 125 26' LCD TV in resident rooms, 2 65' LCD in common areas, 2 dinning room tables, 12 dining room tables, 3 hoyer lifts, 3 dynomaps, 40 dining room chairs, 24 office furniture (includes desk and chairs), 3 conference tables, 10 common area furniture (chairs and end tables), 3 housekeeping cards, patient supplies, 7 refrigerators and freezers, 3 plate warmers, 3 microwaves, 2 steam tables, plates and silverware.** $28,500.00

40. **Office fixtures**

41. **Office equipment, including all computer equipment and communication systems equipment and software
Equipment: (1) Nursing Call Systems installed at the Cerrito location and (1) Nursing Call Systems installed at the Richmond location. The equipment is financed with Dimension Funding, LLC for a 60 month term which commenced in May 2022 with a monthly payment of $3,672.00.  The vendor for the nurse call systems is RF Technologies.** $45,000.00

**Leased Entertain360 Equipment for El Cerrito location, including all parts, accessories, and attachment thereto.** $0.00 (leased)

**Leased Entertain360 for Richmond location, including all parts, accessories, and attachment thereto.** $0.00 (leased)

42. **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles

43. **Total of Part 7.** $73,500.00
Add lines 39 through 42.  Copy the total to line 86.

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
☑ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 8: | Machinery, equipment, and vehicles |
|---|---|

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No.  Go to Part 9.
☑ Yes Fill in the information below.

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 33 of 54

| | General description<br>Include year, make, model, and identification numbers<br>(i.e., VIN, HIN, or N-number) | Net book value of<br>debtor's interest<br>(Where available) | Valuation method used<br>for current value | Current value of<br>debtor's interest |
|---|---|---|---|---|
| 47. | **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| | 47.1.   **2004 Isuzu Box Truck: vehicle is paid in<br>full; 52,956 miles.** | _____ | _____ | $5,000.00 |
| | 47.2.   **2014 Ram Pro-master: paid in full with<br>48,002 miles** | _____ | _____ | $10,000.00 |

48. **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,
floating homes, personal watercraft, and fishing vessels

49. **Aircraft and accessories**

50. **Other machinery, fixtures, and equipment (excluding farm
machinery and equipment)**

51. **Total of Part 8.**

    Add lines 47 through 50. Copy the total to line 87.      | $15,000.00 |

52. **Is a depreciation schedule available for any of the property listed in Part 8?**
☑ No
☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
☑ No
☐ Yes

| Part 9: | Real property |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.
☑ Yes Fill in the information below.

54.1 Lease agreement between El Cerrito Investment Group, LLC ("Landlord") and Shields Nursing Centers, Inc.
("Tenant") for the real property commonly known as 3230 Carlson Blvd., El Cerrito, CA ("Shields Nursing Center").
The Lease commenced on September 1, 1999 with an option to extend the term of the lease for three periods of five
years each by giving notice to Landlord. The base rent provides for percentage increase. Rent is due by the 10th of
each month. The lease is intended to be a Net Lease. Tenant is responsible for real and personal taxes, and for
payment of the utilities. Current base rent amount is $22,341.00. Debtor wishes to assume the lease.

54.2 Lease agreement between James Prasad ("Landlord") and Shields Nursing Centers, Inc. ("Tenant") for the
premises located at 1919 Cutting Blvd., Richmond, California (the "Premises"). The Lease commenced on October 1,
2011 with three options to extend the lease by 5 years each. Monthly base rent is due by the 10th of each month.
Tenant is responsible for real and personal property taxes and for utilities. Current base rent is $41,405.00. Debtor
wishes to assume the Lease.

54.3 Lease agreement between Willie & Monique Shields ("Landlord") and Shields Nursing Centers, Inc. ("Tenant")
for certain freestanding building and parking area commonly known as 606 Alfred Nobel Drive, Hercules, CA 94547
(the "Premises"). The Lease commenced on March 1, 2005 and has an end date of February 28, 2025. Tenant shall
have an option to extend the term of the Lease for three periods of five years each by giving written notice to exercise
this option at least 6 months prior to the expiration of the prior lease term. Tenant shall pay Landlord monthly base
rent of $15,352.20 subject to adjustment per Section 4.2 of the Lease. Tenant is also responsible for personal
property and real property taxes as well as substitute and additional taxes that might be assessed on the property.
Tenant is also responsible for all utilities and services furnished for the Premises. Current base rent is $16,427.00.
Debtor wishes to assume the Lease.

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 34 of 54

Debtor    __Shields Nursing Centers, Inc.__    Case number *(If known)* _____
          Name

---

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.
☑ Yes Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60.** Patents, copyrights, trademarks, and trade secrets | | | |
| **61.** Internet domain names and websites | | | |
| **62.** Licenses, franchises, and royalties<br>**California Dept of Public Health License issued by Health Care Services for Richmond facility; License No.: 140000276.**<br>**California Dept of Public Health License issued by Health Care Services for El Cerrito facility; License No.: 140000139** | | | $0.00 |

| **63.** Customer lists, mailing lists, or other compilations | | | |
|---|---|---|---|
| **64.** Other intangibles, or intellectual property | | | |
| **65.** Goodwill | | | |

**66.** Total of Part 10.

Add lines 60 through 65. Copy the total to line 89.

| $0.00 |
|---|

**67.** Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C.§§ 101(41A) and 107?
☑ No
☐ Yes

**68.** Is there an amortization or other similar schedule available for any of the property listed in Part 10?
☑ No
☐ Yes

**69.** Has any of the property listed in Part 10 been appraised by a professional within the last year?
☑ No
☐ Yes

---

| Part 11: | All other assets |
|---|---|

**70. Does the debtor own any other assets that have not yet been reported on this form?**
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☑ No. Go to Part 12.
☐ Yes Fill in the information below.

---

Official Form 206A/B          Schedule A/B Assets - Real and Personal Property          page 6

| Part 12: | Summary |
|---|---|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $288,467.89 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $1,350,002.51 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $73,500.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $15,000.00 | |
| 88. **Real property.** *Copy line 56, Part 9.*.............................................> | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $1,726,970.40 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $1,726,970.40 |

Case: 23-41201   Doc# 8   Filed: 09/21/23   Entered: 09/21/23 16:44:45   Page 36 of 54

**EXHIBIT-3**

Debtor name **Shields Nursing Centers, Inc.**

United States Bankruptcy Court for the: NORTHERN DISTRICT OF CALIFORNIA

Case number (if known) **23-41201**

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property 12/15

Be as complete and accurate as possible.

1. Do any creditors have claims secured by debtor's property?

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

**Part 1:** List Creditors Who Have Secured Claims

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | Column A<br>Amount of claim<br>Do not deduct the value of collateral. | Column B<br>Value of collateral that supports this claim |
|---|---|---|

| 2.1 | **BizFund LLC** | | |
|---|---|---|---|

Creditor's Name

**2371 McDonald Ave., 2nd Floor**
**Brooklyn, NY 11223**
Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**Debtor's assets**

Column A: **$400,000.00**  Column B: **$0.00**

Creditor's email address, if known

**Describe the lien**
**UCC Financing Statement**

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**3/10/2023**
Last 4 digits of account number
**6925**

Do multiple creditors have an interest in the same property?
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☑ Unliquidated
☑ Disputed

| 2.2 | **CT Corporation System, as representative** | | |
|---|---|---|---|

Creditor's Name

**330 N. Brand Blvd., Ste 700**
**Glendale, CA 91203**
Creditor's mailing address

**Describe debtor's property that is subject to a lien**
**Debtor's assets**

Column A: **Unknown**  Column B: **$0.00**

Creditor's email address, if known

**Describe the lien**
**UCC Financing Statement**

Is the creditor an insider or related party?
☑ No
☐ Yes

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**3/20/2019**
Last 4 digits of account number
**0384**

Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

| ☑ No | ☑ Contingent |
|------|--------------|
| ☐ Yes. Specify each creditor, including this creditor and its relative priority. | ☑ Unliquidated |
| | ☑ Disputed |

---

| 2.3 | CT Corporation System, as representative | Describe debtor's property that is subject to a lien | Unknown | $0.00 |

**Creditor's Name**

**330 N. Brand Blvd., Ste 700 Glendale, CA 91203**

Creditor's mailing address

**Debtor's assets**

_____

**Describe the lien**
**UCC Financing Statement**

_____

Creditor's email address, if known

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Date debt was incurred**
**8/2/2019**

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**
**9874**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☑ Contingent
☑ Unliquidated
☑ Disputed

---

| 2.4 | CT Corporation System, as representative | Describe debtor's property that is subject to a lien | Unknown | $0.00 |

**Creditor's Name**

**330 N. Brand Blvd., Ste 700 Glendale, CA 91203**

Creditor's mailing address

**Debtor's assets**

_____

**Describe the lien**
**UCC Financing Statement**

_____

Creditor's email address, if known

**Is the creditor an insider or related party?**
☑ No
☐ Yes

**Date debt was incurred**
**10/24/2022**

**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Last 4 digits of account number**
**6331**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
☑ Contingent
☑ Unliquidated
☑ Disputed

---

| 2.5 | CT Corporation System, as representative | Describe debtor's property that is subject to a lien | Unknown | $0.00 |

**Creditor's Name**

**330 N. Brand Blvd., Ste 700 Glendale, CA 91203**

Creditor's mailing address

**Debtor's assets**

_____

**Describe the lien**
**UCC Financing Statement**

**Is the creditor an insider or related party?**
☑ No
☐ Yes

Creditor's email address, if known

---

**Date debt was incurred**
__12/11/2019__
**Last 4 digits of account number**
__2300__

**Do multiple creditors have an interest in the same property?**
- ☑ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Is anyone else liable on this claim?**
- ☑ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
- ☑ Contingent
- ☑ Unliquidated
- ☑ Disputed

---

| 2.6 | **Dimension Funding, LLC** | | $158,842.22 | $45,000.00 |
|---|---|---|---|---|

**Creditor's Name**

**Describe debtor's property that is subject to a lien**
__Equipment: (1) Nursing Call Systems installed at El Cerrito location and (1) Nursing Call Systems installed at the Richmond location. The equipment is financed with Dimension Funding, LLC for a 60 month term which commenced in May 2022 wit__

**6 Hughes Street #220
Irvine, CA 92618**
Creditor's mailing address

**Describe the lien**
__Equipment Finance Agreement / UCC Statement__

**Is the creditor an insider or related party?**
- ☑ No
- ☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
- ☑ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
__May 6, 2022__
**Last 4 digits of account number**
__7328__

**Do multiple creditors have an interest in the same property?**
- ☑ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

---

| 2.7 | **Employee Development Department** | | $194.32 | $0.00 |
|---|---|---|---|---|

**Creditor's Name**

**Describe debtor's property that is subject to a lien**
**Debtor's assets**

**PO Box 826203
Sacramento, CA 94230**
Creditor's mailing address

**Describe the lien**
__Notice of State Tax Lien for 7/1/16 - 9/30/16__

**Is the creditor an insider or related party?**
- ☑ No
- ☐ Yes

Creditor's email address, if known

**Is anyone else liable on this claim?**
- ☑ No
- ☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
__2/17/2017__
**Last 4 digits of account number**
__6310__

**Do multiple creditors have an interest in the same property?**
- ☑ No
- ☐ Yes. Specify each creditor, including this creditor and its relative priority.

**As of the petition filing date, the claim is:**
Check all that apply
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

---

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 40 of 54

| 2.8 | **First Corporate Solutions, representative** | Describe debtor's property that is subject to a lien | **Unknown** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**914 S. Street**
**Sacramento, CA 95811**
Creditor's mailing address

Describe the lien
**UCC Financing Statement**
Is the creditor an insider or related party?
☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**12/27/2022**
Last 4 digits of account number
**5418**
Do multiple creditors have an interest in the same property?
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☑ Contingent
☑ Unliquidated
☑ Disputed

---

| 2.9 | **Internal Revenue Service** | Describe debtor's property that is subject to a lien | **$95,794.32** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**P O Box 7346**
**Philadelphia, PA**
**19101-7346**
Creditor's mailing address

Describe the lien
**Notice of Federal Tax Lien for 4th Q of 2018**
Is the creditor an insider or related party?
☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**6/13/2019**
Last 4 digits of account number
**7295**
Do multiple creditors have an interest in the same property?
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.10 | **Internal Revenue Service** | Describe debtor's property that is subject to a lien | **$851,339.40** | **$0.00** |
|---|---|---|---|---|

Creditor's Name

**P O Box 7346**
**Philadelphia, PA**
**19101-7346**
Creditor's mailing address

Describe the lien
**Notice of Federal Tax Lien  for 2012 - 2016**
Is the creditor an insider or related party?
☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**8/22/2018**
Last 4 digits of account number
**5811**
Do multiple creditors have an interest in the same property?

As of the petition filing date, the claim is:
Check all that apply

Case: 23-41201　　Doc# 8　　Filed: 09/21/23　　Entered: 09/21/23 16:44:45　　Page 41 of 54

☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 1 | **Internal Revenue Service** | Describe debtor's property that is subject to a lien | $1,882,355.99 | $0.00 |

Creditor's Name

**P O Box 7346**
**Philadelphia, PA**
**19101-7346**
Creditor's mailing address

Describe debtor's property that is subject to a lien
**Debtor's assets**

Describe the lien
**Notice of Federal Tax Lien for 2011 - 2017**
Is the creditor an insider or related party?

Creditor's email address, if known

☑ No
☐ Yes
Is anyone else liable on this claim?

Date debt was incurred
**8/22/2018**
Last 4 digits of account number
**6064**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Do multiple creditors have an
interest in the same property?
☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 2 | **Internal Revenue Service** | Describe debtor's property that is subject to a lien | $181,502.16 | $0.00 |

Creditor's Name

**P O Box 7346**
**Philadelphia, PA**
**19101-7346**
Creditor's mailing address

Describe debtor's property that is subject to a lien
**Debtor's assets**

Describe the lien
**Notice of Federal Tax Lien for 3/31/2018**
Is the creditor an insider or related party?

Creditor's email address, if known

☑ No
☐ Yes
Is anyone else liable on this claim?

Date debt was incurred
**12/17/2018**
Last 4 digits of account number
**0360**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Do multiple creditors have an
interest in the same property?
☑ No
☐ Yes. Specify each creditor,
including this creditor and its relative
priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 3 | **Leaf Capital Funding, LLC** | Describe debtor's property that is subject to a lien | $33,212.39 | $0.00 (leased) |

Creditor's Name

**2005 Market Street, 14th Fl**
**Philadelphia, PA 19103**
Creditor's mailing address

Describe debtor's property that is subject to a lien
**Leased Entertain360 Equipment for El Cerrito**
**location, including all parts, accessories, and**
**attachment thereto.**

Describe the lien
**Equipment Lease for El Cerrito /**
**UCC Financing**
Is the creditor an insider or related party?
☑ No

---

Case: 23-41201    Doc# 8    Filed: 09/21/23    Entered: 09/21/23 16:44:45    Page 42 of 54

Creditor's email address, if known

☐ Yes
Is anyone else liable on this claim?

**Date debt was incurred**
**December 22, 2022**
**Last 4 digits of account number**
**6730**

☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 4 | **Leaf Capital Funding, LLC** | | |
|---|---|---|---|

Creditor's Name

**Describe debtor's property that is subject to a lien**    $40,305.31    $0.00 (leased)
**Leased Entertain360 for Richmond location, including all parts, accessories, and attachment thereto.**

**2005 Market Street, 14th Fl**
**Philadelphia, PA 19103**
Creditor's mailing address

Describe the lien
**Equipment Lease for Richmond**
Is the creditor an insider or related party?
☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**3/23/2023; UCC recorded 3/31/2023**
**Last 4 digits of account number**
**8332**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 5 | **U.S. Small Business Administration** | | |
|---|---|---|---|

Creditor's Name

**Describe debtor's property that is subject to a lien**    $2,000,000.00    $0.00
**Debtor's assets**

**El Paso Loan Service Center**
**10737 Gateway West, Ste. 300, El Paso, TX 79935**
Creditor's mailing address

Describe the lien
**EIDL Loan**
Is the creditor an insider or related party?
☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

**Date debt was incurred**
**5/23/2020**
**Last 4 digits of account number**
**8008**

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

---

| 2.1 6 | | | | |
|---|---|---|---|---|
| | **UFS West LLC** | Describe debtor's property that is subject to a lien | $200,000.00 | $0.00 |
| | Creditor's Name | **Debtor's assets** | | |

**1915 Hollywood Blvd.,
Suite 200A
Hollywood, FL 33020**
Creditor's mailing address

Describe the lien
**UCC Financing Statement**
Is the creditor an insider or related party?

☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?

☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred
**5/2/2023**
Last 4 digits of account number
**1531**

Do multiple creditors have an interest in the same property?

☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

As of the petition filing date, the claim is:
Check all that apply

☐ Contingent
☑ Unliquidated
☑ Disputed

---

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any. | **$5,843,546.1 1**

---

**Part 2:   List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name  and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **CESC - Covid EIDL Service Center
14925 Kingsport Rd.
Fort Worth, TX 76155** | Line  **2.15** | |
| **U.S. Small Business Administration
Attn: District Counsel
455 Market Street, Suite 600
San Francisco, CA 94105** | | |
| **CIT Bank, N.A., a Division of
First-Citizens Bank & Trust Company
10201 Centurion Pkwy N., #100
Jacksonville, FL 32256** | Line  **2.6** | |
| **Internal Revenue Service
PO Box 145595
Stop 8420G
Cincinnati, OH 45250-5585** | Line  **2.9** | |
| **Leaf Capital Funding, LLC
1720A Crete Street
Moberly, MO 65270** | Line  **2.13** | |
| **Lien Solutions
PO Box 29071
Glendale, CA 91209-9071** | Line  **2.2** | |

**RF Technologies**
**3125 N 126th Street**
**Brookfield, WI 53005**

Line __2.6__

**Sentrics**
**1720A Crete Street**
**Moberly, MO 65270**

Line __2.13__

**EXHIBIT-4**

MICHAEL JAY BERGER (State Bar # 100291)
LAW OFFICES OF MICHAEL JAY BERGER
9454 Wilshire Boulevard, 6th Floor
Beverly Hills, California 90212
T: (310) 271.6223
F: (310) 271.9805
E: Michael.Berger@bankruptcypower.com

Proposed Counsel for Debtor-in-Possession
Shields Nursing Centers, Inc.

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re:

Shields Nursing Centers, Inc.,

                        Debtor-in-Possession.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO.: 23-bk-41201 CN11

Chapter 11

**[PROPOSED] INTERIM ORDER ON DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL**

Date:  September 25, 2023
Time:  2:00 p.m.
Place: U.S. Bankruptcy Court
         Courtroom 215
         1300 Clay Street
         Oakland, CA 94612

1

The "Debtor's Emergency Motion Pursuant To Section 363(c) of The Bankruptcy Code And Rule 4001(b) of The Federal Rules Of Bankruptcy Procedure For Interim Order Authorizing Use of Cash Collateral" (the "Cash Collateral Motion") filed by Shields Nursing Centers, Inc., the debtor and debtor in possession in the above-captioned bankruptcy case (the "Debtor") came on for hearing on an expedited basis on September 25, 2023 at 2:00 p.m., before the Honorable Charles Novack, United States Bankruptcy Judge, in his Courtroom at 1300 Clay Street Oakland, California. Debtor sought authorization to use the cash collateral of the secured creditors identified in the Cash Collateral Motion on an interim basis. In support of the Cash Collateral Motion, Debtor submitted the Declaration of William M. Shields Jr., and supporting documents. Appearances at the hearing are reflected on the record.

Based upon the representations of counsel made at the hearing, the facts and circumstances of this matter, the contents of the Cash Collateral Motion and good cause appearing,

IT IS HEREBY ORDERED as follows:

1. The Cash Collateral Motion is granted on an interim basis through _____, 2023.

2. The Debtor is authorized to use the secured creditors' cash collateral to make the payments set forth in the budget attached to the Cash Collateral Motion as Exhibit-1.

3. The secured creditors' liens that existed against the cash collateral on the petition date will attach to the receivables that the Debtor collects between petition date and _____, 2023.

4. A final hearing on the Cash Collateral Motion is scheduled for _____ \_\_\_, 2023 at  :00 a.m./p.m. in Courtroom 215 of the above-captioned courthouse. Debtor shall serve by _____, 2023 the notice of final

2

hearing on the Cash Collateral Motion on all secured creditors and 20 largest general unsecured creditors. Any opposition to the Cash Collateral Motion must be filed and served by _____, 2023.

***END OF ORDER***

3

[PROPOSED] INTERIM ORDER ON DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

# COURT SERVICE LIST

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4

[PROPOSED] INTERIM ORDER ON DEBTOR'S EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE
4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 9454 Wilshire Blvd., 6th Fl., Beverly Hills, CA 90212

A true and correct copy of the foregoing document entitled (*specify*): **DEBTOR'S (1) EMERGENCY MOTION PURSUANT TO SECTION 363(c) OF THE BANKRUPTCY CODE AND RULE 4001(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR ORDER AUTHORIZING USE OF CASH COLLATERAL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 9/21/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael Jay Berger**    michael.berger@bankruptcypower.com, michael.berger@ecf.courtdrive.com
- **Trevor Ross Fehr**    trevor.fehr@usdoj.gov
- **Office of the U.S. Trustee/Oak**    USTPRegion17.OA.ECF@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 9/21/2023, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Honorable Charles Novack
1300 Clay Street, Courtroom 215
Oakland, CA 94612

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/21/2023 | Yathida Nipha | /s/Yathida Nipha |
|-----------|---------------|------------------|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVED BY EMAIL:**

U.S. Trustee
Attn: Trevor Ross Fehr, Esq.
trevor.fehr@usdoj.gov
(408) 535-5525

**SECURED CREDITORS:**

BizFund LLC
Attn: Danny Koshanfar
uw@byzfunder.com s.robertson@byzfunder.com
(888) 958-3781

CT Corporation
uccfilingreturn@wolterskluwer.com
800-331-3282

Dimension Funding LLC
**sales@dimensionfunding.com**
800-755-0585

EDD
CDBankruptcyGroup.Tax@edd.ca.gov
1-800-300-5616

First Corporate Solutions
First Corporate Solutions
SPRS@FICOSO.COM 916-558-4988

IRS
Attn: Aixa Cassim (Assigned IRS Agent)
Aixa.cassim@irs.gov
800-973-0424
Fax 267-466-1015

Leaf Capital Funding
**info@LEAFnow.com**
(866) 219-7924

US. SBA
c/o Anne Manalili, Esq.
anne.manalili@sba.gov
213-634-3875

UFS West LLC
Sam Drillman
sam@mayfairbusinesscapital.com
718-775-6393

**20 LARGEST UNSECURED CREDITORS:**

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

AMPG Healthcare Solution, Inc,
jr@firstcallns.com
(408) 262-1533

BizFund LLC
Attn: Danny Koshanfar
uw@byzfunder.com s.robertson@byzfunder.com
(888) 958-3781

BlueVine
Support@bluevine.com.
888-216-9619

CTI III, LLC
Attn: Sarah Maculak
smaculak@ctillc.com
916-883-8992

Dept. of Health Care Services
qaf@dhcs.ca.gov
(916) 650-0583

Dimension Funding, LLC
**sales@dimensionfunding.com**
**800**-755-0585

Diagnostic Laboratories
Monique.Montoya@tridentcare.com
(469) 609-2753 ( 877) 235-0377

El Cerrito Investment
**Romney White**
(510) 525-**8897**
rommney@eyringrealty.com

Earleen Miller
c/o Labor Commissioner Office
laborcomm.wca.oak@dir.ca.gov
(510) 622-3273

Graph Insurance Group
MMensh@graphgroup.com
(212) 235-1231

IRS
Attn: Aixa Cassim
Aixa .cassim@irs.gov
800-973-0424
Fax 267-466-1015
James Prasad

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

James Prasad
jamesparsad@yahoo.com
510-219-8652

Kaiser Foundation Health Plan
Esc-largeaeements@kp.org
kpsc-community-benefit@kp.org
(800) 731-4661

McKesson Medical Surgical
Attn: Jennifer
(800) 328-8111
mms.cft@mckesson.com.
service.customerfinancing.com

Nextaff Group
accounting@nextaff.com
(913) 562-5610

Pharmerica
(800) 458-3784
**billing33183@pharmerica.com**

SHIFTMED, LLC
billingsupport@shiftmed.com
(866) 892-6221

US SBA
c/o Anne Manalili, Esq.
anne.manalili@sba.gov
213-634-3875

UFS West LLC
Sam Drillman
sam@mayfairbusinesscapital.com
718-775-6393

Webfund
Attn: Shanna Kaminski, Esq.
skaminski@kaminskilawpllc.com
legal@uptownfund.com
517-294-2101

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.